UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ACCADIA SITE CONTRACTING, INC.,        **REPORT AND RECOMMENDATION**

                       Plaintiff,

v.                                              14-CV-00341(RJA)(JJM)

NORTHWEST SAVINGS BANK,

                       Defendant.
_____

         This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [35].[1] Before me is the renewed motion for summary judgment by defendant Northwest Savings Bank ("Northwest") [39]. For the following reasons, I recommend that the motion be denied.

## BACKGROUND

         This action arises out of a commercial banking account opened on April 30, 2010 at Northwest by Paul Marinaccio on behalf of plaintiff Accadia Site Contracting, Inc. ("Accadia"). Northwest's Statement of Material Facts [43], ¶3. The parties dispute whether one of the agreements received and acknowledged by Mr. Marinaccio at the time of the account opening was the Deposit Account Agreement and Disclosure ("DAAD") [41-3], which includes a provision that absolves Northwest of liability unless notified within 60 days of a forged signature, or within 30 days for any "subsequent items paid, in good faith, containing an unauthorized signature or alteration by the same wrongdoer". Northwest's Statement of Material

---

[1]       Bracketed references are to the CM/ECF docket entries.

Facts [43], ¶¶13-14; Accadia's Response to Northwest's Statement of Material Facts [46-2], ¶¶13-14; DAAD [41-3], p. 8 of 9.

After the account was opened, unauthorized drafts made payable to Debra Gramza, Accadia's corporate secretary, were drawn against the account until July 2013, when the fraud was uncovered and Mr. Gramza's account privileges were rescinded. Northwest's Statement of Material Facts [43], ¶¶10, 26.  In October 2013, Ms. Gramza pleaded guilty to second degree larceny and other offenses arising from the theft of approximately $700,000 from Accadia for the period of December 12, 2008 to July 29, 2013. Id., ¶49.

Ms. Gramza accomplished the fraud by using a stamp bearing Mr. Marinaccio's signature.  He testified that the stamp was created for a separate restaurant business, and that he instructed Ms. Gramza not to use any longer when that business closed.  Accadia's Response to Northwest's Statement of Material Facts [46-2], ¶52.  Although Accadia's accountants reviewed monthly account statements that were sent by Northwest to Accadia, and a bonding company alerted Mr. Marinaccio a year and a half earlier that there was an issue with Accadia's accounting records, the fraud continued undetected. Northwest's Statement of Material Facts [43], ¶¶27, 30, 31.

The last check drawn against Accadia's account made payable to Ms. Gramza was dated July 22, 2013.  Northwest's Statement of Material Facts [43], ¶43.  Although the parties dispute whether oral or written notice was required (*see* Accadia's Response to Northwest's Statement of Material Facts [46-2], ¶48), it is undisputed that the first written notice of the alleged forgeries was made by an October 10, 2013 letter from Accadia's counsel. Northwest's Statement of Material Facts [43], ¶48.

Accadia commenced this action by Complaint filed in State of New York Supreme Court, County of Erie, on April 15, 2014, alleging breach of contract against Northwest for charging its account for the forged and unauthorized drafts presented by Ms. Gramza [1-2]. The action was removed to this court on May 6, 2014 [1]. Northwest initially filed a pre-answer motion for summary judgment [7], and Accadia cross-moved for a stay to conduct discovery necessary to oppose the motion [18]. Thereafter, the motions remained in abeyance, at the request of the parties, to permit them to conduct limited discovery and await the resolution of a pending state court action against Accadia's former accountants. *See* August 25, 2014 Text Order [28], October 8, 2014 entry, January 6, 2015 status report [30]; April 10, 2015 status report [32]. That stay remained in effect until May 2016, when the parties agreed to withdraw the pending motions and a deadline was set for Northwest's renewed motion for summary judgment, incorporating the limited discovery that occurred. May 17, 2016 Text Order [38].[2]

Northwest's renewed motion for summary judgment argues that Accadia failed to provide it with timely written notice of the fraud as required by the DAAD (Northwest's Memorandum of Law [44], pp. 14-21), and that Accadia's claims are barred because the loss it incurred was a direct result of Mr. Marinaccio's own lack of diligence and negligence. Id., pp. 21-25.

## ANALYSIS

**A.     Summary Judgment Standard**

"The standards governing summary judgment are well settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and

---

[2]     At that time, the parties also agreed that the Complaint [1-2] sufficiently pleads, in good-faith, an amount in controversy in excess of the $75,000 jurisdictional threshold of 28 U.S.C. §1332. May 17, 2016 Text Order [38].

admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B.      Did Accadia Fail to Provide Timely Notice of the Unauthorized Transactions?**

In arguing that Accadia failed to provide timely written notice of the unauthorized transactions, Northwest relies upon the limitations periods contained in the DAAD. Northwest's Memorandum of Law [44], pp. 17-21.[3]  Both parties apply New York law and agree that a bank and its customer may shorten the one-year notice period of New York Uniform Commercial Code ("UCC") §4-406(4) by agreement.[4]  Northwest's Memorandum of Law [44], p. 15; Accadia's Memorandum of Law [46-1], p. 3.  However, they dispute whether the DAAD is enforceable against Accadia.

---

[3]      Although Northwest's argument in support of summary judgment is captioned "Plaintiff Failed to Provide Timely Written Notice Under the UCC or [DAAD]", its argument focuses on the limitations period of the DAAD.  See Northwest's Memorandum of Law [44], pp. 17-21.  Even after this was highlighted in Accadia's opposition (Accadia's Memorandum of Law [46-1], p. 3 n. 2), Northwest did not attempt to clarify this issue.  Therefore, I have treated Northwest's motion as relying solely on the limitations period of the DAAD.

[4]      UCC §4-406(4) states that "[w]ithout regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item . . .  is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration".

Under New York law, "the fundamental basis of a valid enforceable contract is a meeting of the minds of the parties. If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof." Schurr v. Austin Galleries of Illinois, Inc., 719 F.2d 571, 576 (2d Cir. 1983). As Accadia acknowledges, its assent to the DAAD may be established in a variety of ways, including by actual receipt of the DAAD, inquiry notice of the DAAD, or by its receipt of another agreement incorporating the DAAD by reference. Accadia's Memorandum of Law [46-1], pp. 4-5, 16-20 (citing Romanov v. Citibank, 2014 U.S. Dist. LEXIS 83534, *31-53 (S.D.N.Y. 2014), aff'd, 603 Fed. Appx. 59 (2d Cir. 2015) (Summary Order)). Northwest points to the following items, which were signed by Mr. Marinaccio at the time of the account opening, as establishing his assent to the DAAD:

> - - The application, which stated, in relevant part: "We have read and accepted the terms of the Disclosure for Electronic Funds, the Business Online Banking Agreement" [42-1], p. 3 of 5;
>
> - - The signature pad, which "contain[ed] words saying that you're agreeing to the deposit account disclosures". Harenda deposition transcript [46-3], p. 113 of 162;[5]
>
> - - The Business Online Banking Agreement, which stated, in relevant part: "The Company hereby acknowledges . . . the terms and agreements originally disclosed to the Company at the time the . . . accounts opened". Panaro Reply Affidavit [42-1], p. 5 of 5; and
>
> - - The Express Deposit Agreement ("EDA"), which stated, in relevant part: "the terms of the Customer's Deposit Agreement(s) with the Bank are incorporated by reference and made a part of this Agreement . . . . The Customer agrees that this Agreement is the entire statement of the terms and conditions that apply to the

---

[5]   No copy of the actual signature pad Mr. Marinaccio signed is included in the record.

subject matter hereof". [42-3], p. 12 of 15. *See* Northwest's Reply Memorandum of Law [49], pp. 3-4.[6]

  **1.**  **Actual Receipt**

Since the DAAD did not require a customer's signature (Harenda deposition transcript [46-3], p. 110 of 162), Accadia attempts to establish actual receipt by relying on Ms. Harenda's testimony that the DAAD was one of the documents that automatically prints out when an account is opened, and that she was absolutely positive that she gave Mr. Marinaccio a copy of it, as she did whenever she opened an account. Harenda deposition transcript [46-3], pp. 107-08, 115-19, 143-44 of 162; Northwest's Reply Memorandum of Law [49], p. 6.

  By contrast, Mr. Marinaccio testified that he did not recall receiving the DAAD at the time the account was opened. Marinaccio deposition transcript [46-3], p. 23 of 162. Nor did he sign any document expressly acknowledging his receipt of the DAAD. Giving him every favor inference as the non-movant, coupled with Ms. Harenda's concession that she had no specific recollection of meeting Mr. Marinaccio at the time the account was opened or of providing him with the DAAD (Harenda deposition transcript [46-3], pp. 144-45 of 162), I conclude that a triable issue of material fact exists as to whether Mr. Marinaccio received the DAAD at the time of the account opening.

---

[6] Although Northwest does not rely upon the Corporate Banking Resolution ([41-2], pp. 2-3 of 3), which was signed by Mr. Marinaccio at the time the account was opened, as establishing Accadia's assent to the DAAD, Christine Harenda, the Northwest employee who opened the account (Harenda deposition transcript [46-3], p. 85 of 162), testified that the Corporate Banking Resolution confirmed Accadia's assent to the DAAD. Id., p. 124 of 162. Curiously, Ms. Harenda also initially testified that she reviewed the signature cards prepared at the time Accadia's account was opened, but later acknowledged that Northwest no longer used such cards at that time. Id., pp. 87, 90-92 of 162.

### 2.    Inquiry Notice

"[I]n cases such as this, where the purported assent is largely passive, the contract-formation question will often turn on whether a reasonably prudent offeree would be on notice of the term at issue. In other words, where there is no actual notice of the term, an offeree is still bound by the provision if he or she is on inquiry notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent." Schnabel v. Trilegiant Corp., 697 F.3d 110, 120 (2d Cir. 2012).   Although Ms. Harenda testified that the signature pad "contain[ed] words saying that you're agreeing to the deposit account disclosures" (Harenda deposition transcript [46-3], p. 113 of 162), Accadia argues that it did not receive sufficient notice of the DAAD, since it was not provided to Mr. Marinaccio until after he signed all of the account documents, including the signature pad.  Accadia's Memorandum of Law [46-1], p. 14.  I agree.

"'As a general principle, an offeree cannot actually assent to an offer unless the offeree knows of its existence.' 1 Williston on Contracts §4:16. An offer - and all of its terms - therefore ordinarily precede acceptance." Schnabel, 697 F.3d at 121.  Here, Ms. Harenda testified that the DAAD is not provided until *after* all of the necessary signatures of the customer, including the signature pad, are obtained.  See Harenda deposition transcript [46-3], pp. 110, 116, 118-19, 128-29 of 162.  "[T]he fact that it was delivered after enrollment and did not require any affirmative acknowledgment of receipt . . . undermines [the defendant's] assertion that the plaintiffs received sufficient notice to bind them to the additional terms through their inaction." Schnabel, 697 F.3d at 123 n. 14.

Nor is there anything in the record to establish that Mr. Marinaccio received prior notice of the existence DAAD or its terms.  See Romanov, 2014 U.S. Dist. LEXIS 83534 at *49-

51 ("[d]efendant's notice argument . . . fails because Citibank's employees indicated that they provide Client Manuals to clients only after clients sign the signature card . . . . When signature cards are presented to clients to sign, furthermore, employees did not explain their significance"). While the signature pad may have "contain[ed] words saying that you're agreeing to the deposit account disclosures" (Harenda deposition transcript [46-3], p. 113 of 162), it does not expressly refer to the DAAD.  Ms. Harenda also provided no further specification to customers, testifying that she generally only advised customers that "by signing the signature pad, you're agreeing to the terms and conditions of the account that you're about to open".  Id., p. 111 of 162. Therefore, I conclude that there is a triable issue of material fact as to whether Accadia had inquiry notice of the DAAD.

### 3.     Incorporation-by-Reference Doctrine

Under New York law, "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements." Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 97 (2d Cir. 2002).  "[T]wo essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement." Torres v. Major Automotive Group, 2014 WL 4802985, *7 (E.D.N.Y. 2014).  First, "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*". PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) (emphasis in original).  Second, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms".  Id.

With respect to the first element, Accadia argues that since the EDA generically refers to incorporation of the terms of the "Customer's Deposit Agreement(s)" ([42-3], p. 12 of 15), a question of fact exists as to whether the DAAD was sufficiently identified. Accadia's Memorandum of Law [46-1], pp. 17-18. In support of that argument, Accadia relies upon Chiacchia v. National Westminster Bank USA, 124 A.D.2d 626, 627 (2d Dep't. 1986). In Chiacchia, the agreement, which broadly stated that the plaintiff "agrees to the rules and regulations of the Bank in force at this date", was insufficient to bind the plaintiff to the terms of the bank's "Rules for Your Safe Deposit Box Service". Id. at 627-28. By contrast, Northwest relies upon Samuel L. Hagan II, P. Co. v. J.P. Morgan Chase Bank, N.A., 33 Misc.3d 1211(A) (Sup. Ct. Kings Co. 2011), in which the court concluded that reference to "Terms and Conditions for Business Accounts" sufficiently identified a document entitled "Terms and Conditions for Business Accounts *and Services*". 33 Misc.3d at *7-8 (emphasis added).

The facts here fall somewhere between the facts of those two cases. Whereas the EDA is not as broadly worded as Chiacchia, its use of the term "Agreement(s)" - signifying that there may be one or more Deposit Agreement - renders it sufficiently distinguishable from Hagan. Adding further ambiguity, the EDA [42-3] also incorporates by reference the "Deposit Agreement" (id., ¶3), refers to the "Bank's Deposit Agreement" (id., ¶10), and refers to the "deposit agreements". Id., ¶18. Recognizing that the DAAD must be identified in the EDA "beyond all reasonable doubt", Bybyk, 81 F.3d at 1201, this element of the incorporation-by-reference doctrine cannot be resolved in this case by summary judgment.

Further, a triable issue of material fact exists as to whether Accadia had knowledge of and assented to the terms of the DAAD. As Accadia argues, "the EDA does not establish [its] assent to the DAAD because defendant has not offered any proof that it provided

Accadia with the DAAD before it signed the EDA". Accadia's Memorandum of Law [46-1], p. 15. In response, Northwest does not point to any evidence establishing that the DAAD was provided to Accadia before the EDA was signed. As discussed above, this "undermines [the defendant's] assertion that the plaintiffs received sufficient notice to bind them to the additional terms through their inaction". Schnabel, 697 F.3d at 123 n. 14.

In any event, even if the EDA validly incorporated the DAAD, Accadia notes that the EDA expressly states that it only "governs [Accadia's] use of the Express Deposit Service", which permits Accadia to make deposits electronically – a service unrelated to the fraud that occurred here. At minimum, that creates an ambiguity as to whether Accadia assented to the terms of the DAAD for any purpose other than its use of the Express Deposit Service. [46-1], pp. 19-20.[7] Therefore, I recommend that this portion of Northwest's motion be denied.

**C.    Is Accadia's Action Barred by Its Own Lack of Diligence and Negligence?**

Northwest argues that "if any portion of [Accadia's] claims [are] timely made, such claims should be dismissed as a matter of law based on [UCC §3-406] and the express provisions of the [DAAD], which prevent [Accadia] from asserting claims against Northwest for allegedly unauthorized drafts arising out of the use of a signature stamp where the claims result solely from [Accadia's] own negligence." Northwest's Memorandum of Law [44], p. 21.

UCC §3-406 provides that: "Any person who by his negligence substantially contributes . . . to the making of an unauthorized signature is precluded from asserting the alteration    or lack of authority against . . . a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or

---

[7]    Based upon this recommendation, I have not addressed whether Accadia's alleged July 2013 oral notice of the fraud was sufficient. See Accadia's Memorandum of Law [46-1], pp. 20-21.

payor's business." "[T]he plain language of section 3–406 makes clear, that [the bank] cannot raise the issue of plaintiffs' contributory negligence without first establishing its own good faith and compliance with the reasonable commercial standards of its business." <u>Lund's Inc. v. Chemical Bank</u>, 870 F.2d 840, 851 (2d Cir. 1989). "[S]ummary judgment is rarely warranted on this issue." <u>Elden v. Merrill Lynch, Pierce, Fenner & Smith Inc</u>., 2011 WL 1236141, *10 (S.D.N.Y. 2011). This case is no exception.

While Northwest relies solely on the Corporate Banking Resolution [41-2] executed by Accadia, which authorized Northwest to "accept and pay without further inquiry" any check drawn on the account bearing Mr. Marinaccio's signature, as absolving it of any duty of inquiry into the checks being cashed by Ms. Gramza (Northwest's Reply Memorandum of Law [49], p. 9), Accadia argues - and Northwest does not dispute - that such provisions are unenforceable as being in contravention to UCC §4-103(1), which prohibits agreements from "disclaim[ing] a bank's responsibility for its own lack of good faith or failure to exercise ordinary care". Accadia's Memorandum of Law [46-1], p. 25 n. 9. For that reason, and for the additional reason that there remains a triable issue of fact as to whether the DAAD is enforceable against Accadia, Northwest's reliance on the DAAD, which places the liability for any unauthorized use of the signature stamp on Accadia ([41-3], p. 3 of 9, Withdrawal Rules, ¶F), is also unavailing.

In any event, even if Northwest could establish that it acted in good faith, and in accordance with reasonable commercial standards, Northwest must still establish that Accadia was negligent, and that its negligence substantially contributed to the loss. "Where . . . a depositor is on notice concerning the forgery of its checks and does not take action to prevent future forgeries, such inaction constitutes negligence that may substantially contribute to such

later forgeries." Zambia National Commercial Bank Ltd. v. Fidelity International Bank, 855 F. Supp. 1377, 1389 (S.D.N.Y. 1994), amended on other grounds, 1994 WL 440717 and 1994 WL 557050 (S.D.N.Y. 1994).  While there is evidence in the record suggesting that Accadia should have been on notice of the fraud and did not take sufficient action to prevent it, there is also evidence, if credited by a jury, which demonstrates the reasonableness of Accadia's conduct. For example, Mr. Marinaccio testified that he directed Ms. Gramza not to use the signature stamp and directed another employee to destroy the stamp, which he never saw again. Marinaccio deposition transcript [46-3], pp. 31-32 of 162.[8]  Accadia also relied upon its accountants to review its statements every quarter, and after its bonding company alerted Mr. Marinaccio to an issue with Accadia's accounting records, he eventually hired another accountant to look at the records, but that accountant also found nothing wrong. Id., pp. 29, 38-39 of 162.

"[W]hether conduct is 'negligent' is a factual determination in all but the most extreme situations". Ortiz v. Rosner, 817 F. Supp. 348, 350 (S.D.N.Y. 1993).  Therefore, I recommend that this portion of Northwest's motion be denied.

**D. Northwest's Request for a Stay**

Northwest requests that "[i]f the Court denies [its] pre-answer motion for summary judgment . . . that the Court find this motion constitutes a 'defense' and order a stay of [its] time to answer . . . until after a final determination is issued regarding the . . . motion". Northwest's Memorandum of Law [44], p. 14.  Since Accadia offers to no opposition to that

---

[8] This is disputed by Northwest, which points to the fact that the signature stamp was also continuously used for checks made payable to individuals and entities for purposes related to the construction business of Accadia. Northwest's Memorandum of Law [44], p. 10.

request, and has not requested an entry of a default, Northwest's request is granted. *See* King v. Wenderlich, 2016 WL 4678998, *2 n. 1(W.D.N.Y. 2016) (Geraci, J.) ("[a]lthough Defendants appear to believe that a motion for summary judgment filed in lieu of an answer stays the deadline for filing a responsive pleading under Rule 12(a) of the Federal Rules of Civil Procedure, 'it is far from clear that it does so.' . . . Nevertheless, the Court will exercise its discretion and allow Defendants to file a responsive pleading within 21 days of this decision"); Bennett v. Fischer, 2010 WL 5525368, *2 n. 6 (2010), adopted, 2011 WL 13826 (N.D.N.Y. 2011) ("[d]espite the lack of a specific rule recognizing such a stay, some courts have deemed the interposition of a pre-answer summary judgment motion as an act of defending in the case, negating a finding of default, while others have not . . . . In this instance, exercising my discretion, I will *sua sponte* order a stay of defendants' time to answer plaintiff's complaint until twenty days after a final determination").

## CONCLUSION

For these reasons, I recommend that Northwest's renewed motion for summary judgment [39] be denied, and that the deadline for Northwest's Answer to the Complaint be stayed until 21days after any decision denying Northwest's renewed motion [39]. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by December 19, 2016 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 5, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge