```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

ACCADIA SITE CONTRACTING, INC.

        Plaintiff,

   -vs-

NORTHWEST SAVINGS BANK,

        Defendant.

**DECISION and ORDER**
**No. 1:14-cv-341(MAT)(JMM)**

_____

## I.   Introduction

Accadia Site Contracting, Inc. ("Accadia" or "Plaintiff"), represented by counsel, instituted this action against Northwest Savings Bank ("Northwest" or "Defendant") alleging breach of contract and negligence based on Defendant's charging of over $700,000 in forged or fraudulently signed drafts against Plaintiff's account. This matter is before the Court upon the Report and Recommendation, dated December 5, 2016, issued by Magistrate Judge Jeremiah M. McCarthy ("the R&R") denying Defendant's renewed motion for summary judgment.

## II.  Background

On April 30, 2010, Paul Marinaccio ("Marinaccio") opened a commercial account ("the Account") at Northwest on behalf of his company, Accadia. The main dispute is whether Marinaccio received and assented to the Deposit Account Agreement and Disclosure ("DAAD"), which includes a notice provision absolving Northwest of liability unless certain stringent notice periods are met.

Unauthorized drafts made payable to Debra Gramza ("Gramza"), Accadia's corporate secretary, were drawn against the Account until July 2013, when the fraud was uncovered. Gramza's account privileges were rescinded at that time, and she pleaded guilty to second degree larceny and related offenses arising from her theft of about $700,000 from Accadia from December 12, 2008, to July 29, 2013.

Gramza accomplished the fraud by using a stamp, bearing Marinaccio's signature, that had been created for a separate restaurant business he owned. The last check drawn against Accadia's account made payable to Gramza was dated July 22, 2013. The first *written* notice of the alleged forgeries was made by an October 10, 2013, letter from Accadia's counsel.

Northwest initially filed a pre-answer motion for summary judgment, and Accadia cross-moved for a stay to conduct discovery necessary to oppose the motion. Limited discovery ensued, and the parties subsequently agreed to withdraw their pending motions. Northwest then filed renewed motion for summary judgment. As noted above, Magistrate Judge McCarthy issued an R&R recommending the denial of Defendant's renewed summary judgment motion for. Defendant filed objections, and Plaintiff filed a response. For the reasons discussed below, the Court adopts in full Magistrate Judge McCarthy's R&R, and denies Northwest's renewed motion for summary judgment.

**III. Standard of Review**

To preserve a claim for review by the district court, the party must make sufficiently specific objections to the R&R. E.g., Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002). "In reviewing the R&R of a dispositive matter from a magistrate judge, the district court 'may adopt those portions of the Report to which no objections have been made and which are not facially erroneous.'" Nansaram v. City of N.Y., No. 12-CV-5038 NGG RLM, 2015 WL 5518270, at *2 (E.D.N.Y. Sept. 17, 2015) (quotation and citation omitted); see also FED. R. CIV. P. 72(b), Advisory Comm. Notes (when a party makes no objection, or only general objections to a portion of an R&R, the district judge reviews it for clear error or manifest injustice). When a party makes specific objections, the district judge must undertake a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b)(1)(C), and "may . . . receive further evidence[.]" Id.; see also Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (discussing § 636(b)(1)(B)).

**IV. Discussion**

    **A.   Northwest's Objection No. 1: No Issue of Fact as to Accadia's Actual Receipt of the DAAD**

The R&R concluded that there is a triable issue of material fact as to whether Marinaccio received the DAAD at the time he opened the account at Northwest based on the following evidence in

the record: Marinaccio did not recall receiving the DAAD at the time the account was opened; Marinaccio did not sign any document expressly acknowledging his receipt of the DAAD; and Northwest employee Harenda had no specific recollection of meeting Marinaccio at the time the account was opened or of providing him with the DAAD.

Northwest objects to this conclusion on a number of grounds. First, Northwest asserts that Harenda was "absolutely positive" that she gave the DAAD to Marinaccio. At her deposition, Harenda was asked, "As you sit here today, can you be absolutely sure that you gave Mr. Marinaccio the account disclosure documents?" Harenda replied, "I give everyone their disclosures." (Harenda: 80-81). Counsel asked if she was "absolutely positive[,]" and Harenda replied, "Yes." (Id.). On subsequent questioning by Accadia's counsel, Harenda admitted she had no specific recollection of meeting with Marinaccio at the time of the account opening, because she opened up "hundreds" of accounts, and in fact had no specific recollection of meeting with anybody from Accadia Site Contracting when that account was opened. (Harenda: 80-81). Harenda maintained that she did provide Marinaccio with the DAAD because "[she] opened their account. [She] hand[s] the disclosures to everyone." (Harenda: 81).

Northwest thus is relying on an internal policy or procedure to establish actual receipt of the DAAD. Accadia argues that the

evidence does not establish the existence of a policy, reliably and consistently followed by Northwest's employees, sufficient to establish the presumption of receipt. Accadia notes that when questioned about a procedure for disseminating account documents to customers, Harenda testified that she would "print all the documents," "go over them with the customer," and give "that" to the customer. (Harenda: 33). Although, at the time of her deposition, Harenda had a "basic like outline of the documents that print[,]" during an account opening, this outline was not in use in 2010, when Accadia opened its account. (Harenda: 40). Harenda also testified that the DAAD would be pre-filled by Northwest's computer system with the name of the Depositor (here, Accadia) and the Financial Institution (here, Northwest). (Harenda: 43-44). However, the DAAD in the record here does not contain any of that information. (See DAAD, Exhibit ("Ex.") C to Affidavit of Linda Panaro ("Panaro Aff.") [Dkt #41-3, p. 2 of 9]).

Northwest also argues customers agree to abide by the DAAD when they sign signature pad which, Harenda testified, "contains words saying that you're agreeing to the deposit account disclosures." (Harenda: 49-50). As Accadia points out, Harenda was not "absolutely positive" that she gave the DAAD to Marinaccio; rather, she testified at her deposition that she had no specific recollection of giving the DAAD to anyone from Accadia. (Harenda: 80-81). Importantly, Northwest has not produced any image or

document that depicts the language or the "words" that supposedly appeared on the signature pad. Harenda acknowledged that when the customer signed the signature pad, purportedly agreeing to the DAAD, the customer "hasn't seen [the DAAD] yet", and stated she "d[id]n't know" if there was a "way to show that that was the customer's signature acknowledging and agreeing to that form versus one of the other forms[.]" (Harenda: 55). Furthermore, none of the documents executed by Marinaccio at the time of the account opening included any reference to the DAAD. (See Exs. A, B & D to Panaro Aff. [Dkt ##41-1, 41-2, 41-4]).

### B. Northwest's Objection 2: No Issue of Fact as to Accadia's Inquiry Notice of the DAAD

The R&R concluded that there was a genuine issue of material fact as to whether Accadia had inquiry notice of the DAAD based on, inter alia, Harenda's testimony that the DAAD was provided to the customer until *after* all of the necessary signatures by the customer, including a signature on the signature pad, had been obtained by a Northwest employee. (R&R at 7 (citing Harenda: 46, 52, 54-55, 64-65); Schnabel v. Trilegiant Corp., 697 F.3d 110, 123 n. 14 (2d Cir. 2012) ("But even had the email more clearly indicated that it contained an arbitration clause, the fact that it was delivered after enrollment and did not require any affirmative acknowledgment of receipt, undermines Trilegiant's assertion that the plaintiffs received sufficient notice to bind them to the additional terms through their inaction.") (internal citation

omitted)). Likewise, as the R&R noted, Harenda did not provide any explanation to the customers about the substance or significance of the DAAD, stating that she simply advised them that "by signing the signature pad, you're agreeing to the terms and conditions of the account that you're about to open." (R&R at 8 (citing Harenda: 47)). The Court finds that the R&R did not err in concluding that there was a triable issue of fact as to whether Accadia had inquiry notice of the DAAD. See Hirsch v. Citibank, N.A., No. 12 CIV. 1124 DAB, 2014 WL 2745187, at *17 (S.D.N.Y. June 10, 2014) ("Defendant's notice argument also fails because Citibank's employees indicated that they provide Client Manuals to clients only after clients sign the signature card. When signature cards are presented to clients to sign, furthermore, employees do not explain their significance.") (internal citations to record omitted), aff'd, 603 F. App'x 59 (2d Cir. 2015).

### C.   Northwest's Objection 3: No Issue of Material Fact as to Whether the DAAD Was Incorporated by Reference

The R&R found that the applicability of the incorporation-by-reference doctrine could not be resolved on summary judgment because, inter alia, the DAAD was not identified with sufficient clarity in the Electronic Deposit Agreement ("EDA") signed on behalf of Accadia. (R&R at 9 (citing PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) ("New York follows that common law rule by 'requir[ing] that the paper to be incorporated into a written instrument by reference must be so referred to and

described in the instrument that the paper may be *identified beyond all reasonable doubt*.'") (quoting Chiacchia v. National Westminster Bank USA, 124 A.D.2d 626, 628, 507 N.Y.S.2d 888, 889-90 (2d Dep't 1986) (emphasis and brackets in original)). The Court agrees with the R&R's analysis and conclusion that the EDA, which does not refer to the DAAD by its complete title, and only "generically refers to incorporation of the terms of the 'Customer's Deposit Agreement(s),'" did not identify the DAAD "'beyond all reasonable doubt'" as required by New York law. (R&R at 9).

**D.   Northwest's Objection 4: Accadia Did Not Comply with Uniform Commercial Code § 4-406(4)**

Northwest argues that as a result of finding material issues of fact regarding the enforceability of the DAAD against Accadia, the R&R erroneously failed to address the question of whether Accadia is barred from suit based on its failure to provide written notice of the allegedly unauthorized signatures within the period prescribed by contract or statute. (Def's Objs. at 11 (citing R&R at 10 n. 7 (finding it unnecessary to address whether Accadia's July 2013 oral notice of the fraud was sufficient)). However, Northwest omits mention of the fact that R&R found that it had not actually provided argument regarding the timeliness of the notice under Uniform Commercial Code ("UCC") § 4-406(4), but had instead only argued the limitations period set forth in the DAAD. (R&R at 4 n. 3 ("Although Northwest's argument in support of summary

judgment is captioned 'Plaintiff Failed to Provide Timely Written Notice Under the UCC or [DAAD],' its argument focuses on the limitations period of the DAAD. Even after this was highlighted in Accadia's opposition, Northwest did not attempt to clarify this issue. Therefore, I have treated Northwest's motion as relying solely on the . . . DAAD.") (internal citations to record omitted). Accadia argues that the Court should reject the argument asserted in Objection 4 because it was not properly raised in Northwest's original motion papers and, in contravention of F.R.C.P. 72(c) and this District's Local Rules, Northwest did not provide an explanation of why this Court should consider the argument now. Although "[w]hether a party may raise a new legal argument, or present an entire previously unasserted cross-motion or opposition, for the first time in objections to an R&R has not yet been decided in this Circuit[,]" Amadasu v. Ngati, No. 05-CV-2585 RRM LB, 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012) (citation omitted), some district courts in this Circuit have adopted the six-factor test set forth in Williams v. McNeil, 557 F.3d 1287, 1291-92 (11th Cir. 2009). See Amadasu, 2012 WL 3930386, at *5 (collecting cases). One of the factors favoring consideration of the new argument is that "the resolution of the new legal issue is not open to serious question," id. at *6 (citation omitted).

Here, as Accadia contends, the UCC § 4-406(4) notice issue is not clearly settled in the New York courts, and Northwest's

position is based on an incomplete analysis of New York law. UCC § 4-406(4) provides as follows:

> Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

N.Y. U.C.C. Law § 4-406(4). Thus, by its terms, UCC § 4-406(4) does not require the notice of a fraudulent or forged signature to be in writing.

Northwest relies on the first sentence of Woods v. MONY Legacy Life Ins. Co., 84 N.Y.2d 280 (1994), stating that "UCC 4-406(4) bars suit to recover amounts paid by a bank on a forged instrument unless the customer gives *written* notice of the forgery within one year of the time the account statement was made available." Id. at 282 (emphasis supplied). However, the form of the notice by the bank customer was not at issue in Woods. See Robinson Motor Xpress, Inc. v. HSBC Bank, USA, 37 A.D.3d 117, 124, 826 N.Y.S.2d 350 (2d Dep't 2006) ("Viewed in this light, we do not read the Court of Appeals' reference to 'written' notice in Woods to be controlling with respect to the question before us. The issue of 'written' notice was simply not presented in that case. Since a contrary rule is consistent with both the language of the statute and UCC

jurisprudence generally, we conclude that written notice of the unauthorized signature is not required to satisfy the requirements of UCC 4-406(4). Accordingly, the Supreme Court erred in granting the defendant's motion for summary judgment in this case."). In the cases on which Northwest relies, the form of notice was not at issue, see New Gold Equities Corp. v. Chemical Bank, 674 N.Y.S.2d 41, 41 (1st Dep't 1998), or the court simply cited the *dicta* from Woods and did not conduct an independent analysis, see Ryan v. Fleet Bank of N.Y., 730 N.Y.S.2d 628, 628 (4th Dep't 2001). Accordingly, the Court declines to resolve the newly raised notice issue in Defendant's fourth objection.

### E. Northwest's Objection 5: No Issue of Material Fact as to Accadia's Contributory Negligence

The R&R determined that while "there is evidence in the record suggesting that Accadia should have been on notice of the fraud and did not take sufficient action to prevent it, there is also evidence, if credited by a jury, which demonstrates the reasonableness of Accadia's conduct." (R&R at 12). As the R&R noted, Marinaccio testified that he directed Gramza not to use the signature stamp, directed another employee to destroy the stamp, had Accadia's accountants review its bank statements quarterly, and, after its bonding company alerted him to an issue with Accadia's accounting records, hired another accountant, who found nothing amiss. (R&R at 12 (citing Marinaccio: 29-30, 36-37)). The Court agrees with the R&R that this is not one of those "extreme

-11-

situations," Ortiz v. Rosner, 817 F. Supp. 348, 350 (S.D.N.Y. 1993), where the question of negligence can be resolved as a matter of law. See INA Aviation Corp. v. United States, 468 F. Supp. 695, 699 (E.D.N.Y. 1979) ("As a general proposition, negligence questions are properly resolved at trial because, upon a motion for summary judgment, a court may not try issues of fact; it may only determine whether there are factual issues to be tried."), aff'd, 610 F.2d 806 (2d Cir. 1979).

**V.   Conclusion**

For the foregoing reasons, the Court adopts the R&R in full and denies Northwest's renewed motion for summary judgment (Dkt #39). The Court further orders that the deadline for Northwest to file its answer to the complaint is extended until twenty-one (21) days after the date of entry of this decision and order.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   February 8, 2017
         Rochester, New York